UNITED STATES DISTRICT COURT			SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| ALLSTATE INSURANCE, | § | |
| | § | |
| Plaintiff, | § | |
| versus | § | CIVIL ACTION H-04-2173 |
| | § | |
| | § | |
| WILLIAM MADER, *et. al*, | § | |
| | § | |
| Defendants. | § | |

# Opinion on Summary Judgment

1.   *Introduction.*

A couple purchased a meat market. Six months later, it was destroyed by fire. Their insurance carrier denied the claim that they filed. It said that the policy had been obtained on false representations in the application – representations materially affecting the underwritten risk. Secondarily, the carrier rejected the claim as incomplete and false. The couple counter-claimed, arguing that the insurer failed to meet its contractual obligation. The insurance company is correct and will not pay because (a) the policy is void, (b) if it were not, the claim is fiction, and (c) the couple litigated abusively, causing their answer and counter-claim to be struck.

2.   *Background.*

In August 2003, Yvonne Mader and William Mader bought land, a building, and equipment from Lillian Sklar for $100,000. Sklar had operated the property in Wharton, Texas, as a meat market for forty years. Her business had been closed for several weeks. They paid $5,000 and issued a note for $95,000. On acquiring the property, the Maders started a new business – Mader's Meat Market and Smokehouse.

In December 2003, Yvonne Mader applied for property insurance from Allstate. She told the multi-line insurance agent that (a) her husband had been in the meat market

business for ten years and (b) they had been in business at the insured location for forty years. She told him that the value of the building, equipment, and inventory was $350,000. After he wrote her answers on the form, Mrs. Mader reviewed and signed the application. Based on this information, Allstate issued a policy covering the building, contents, and spoilage. The policy's limit was $525,000.

In February 2004, a fire destroyed the meat market. Mader filed a proof of loss for $566,077. Allstate investigated. It found that the fire's circumstances were suspicious. It also discovered that (a) the Maders' Meat Market and Smokehouse was a new business, and (b) the Maders had never worked at the insured location before August 2003. Allstate says that these misrepresentations void the policy.

3.   *The Application.*

If an applicant misrepresents a fact in an insurance contract that is material to the underwriting risk, the contract is void. TEX. INS. CODE ANN. § 21.16. Here, the Maders lied about how long they had been in business and how long they had been in business at the particular location. Following the fire, they also lied about the value of the building and its contents.

In December 2003, the Maders told Allstate that they had been in the meat-market business for ten years. In her deposition, Yvonne Mader testified that her husband traded fish, oysters, calves, and sausage for other goods but that they never sold meat or owned a store. Allstate believed that it was insuring experienced butchers, not novices. Because a new business is significantly riskier, Allstate would not have issued the policy to the Maders had it known the truth.

The Maders also told Allstate that they had been in business at that location for forty years. Mrs. Mader admitted that her husband and she had never worked at the location, but she argued that Sklar had. Sklar did not apply for the insurance, nor was she a beneficiary. While Sklar may have owned a similar business at that location for forty years, she closed it before the Maders bought the building and equipment. The Mader's meat market was a new venture, not a continuation of the existing business. The Maders cruelly did not even name her as a co-insured to cover the amount of her lien.

4. *Operations and Calculation.*

The Maders would like to question Allstate's reliance and the representation's materiality – all without a fact.

Allstate relied on the misrepresentations when it issued the policy as a matter of law. Unless the Maders want to posit that Allstate does not evaluate risks before underwriting them, Allstate must have relied on what it had been told by the Maders. Reliance is a fact because all that the carrier knew about the insureds and the property at risk was what it had been told on the application.

The operating history was material to Allstate. The loss history of people starting new businesses is significantly higher than for people with a consistent history in the business. Allstate would not have issued the policy that it did issue to the Maders if it had known the truth. It may well have issued a different policy for a different premium, but the Maders cheated it out of the opportunity correctly to evaluate the risk.

5. *Intent.*

The Maders argue that because they did not have the intent to deceive Allstate, the contract is not void. They say that their manager had been in the meat-market business for ten years and that Sklar had been in business at that location for forty years. This, they argue, is what they meant.

A contract memorializes the parties' intent at time of execution. Nothing in the policy suggests that Allstate or the Maders contemplated third parties. Allstate had no interest in the market manager or the previous owner. The insurance application unequivocally pertained solely to the applicants – the Maders.

Still, the Maders urge the court to consider *Parsaie v. United Olympic Life Ins. Co.*, holding that the insurer must prove the insured's intent to deceive. 29 F.3d 219 (5th Cir. 1994). The Texas statute says that the applicant must have intended to mislead the carrier. In the context of its case, the court deciding *Parsaie* held the plaintiff created a fact issue, precluding summary judgment, when she produced an affidavit where she simply asserted that she did not intend to mislead the insurer. With peculiar sincerity the Maders have gone beyond asking the court to consider that case; they copied Parsaie's affidavit – changing only the names – and submitted it as their own. Yvonne Mader's

affidavit says, in part:

> I relied on an insurance agent for Sensible Insurance to fill out and complete the application form for insurance and at the time I signed by name, I had no knowledge that any statement or response to questions on the application were untrue, inaccurate, or misleading.

Parsaie was an Iranian immigrant who swore that she read and spoke little English. She was asked questions about her medical history, including treatments in the past five years. Parsaie knew whether her answer was objectively true. She says *now* that she did not understand *then,* but then she did not say, "I don't understand." In dealing with others, people may rely on what they say and do at the time.

Under the Mader-Parsaie approach, every statement of fact becomes a question of intention.[1] No contract, application, testimony, speech, or other verbal datum has significance in itself; it is only what the actor-author says that it means. The abstract fact of having applied for insurance is eviscerated unless the putative applicant grants that she did what everyone saw and heard happen. Her acts of signing and paying have meaning. She is not the keeper of the mutual truth of the mutual exchange in mutual reliance on the appearances each of them presented to the other.

This case involves representations about length of doing a specific business and doing it at a specific location. These people had bought the store from Sklar within months of their application. The best they can say is that they represented the tenure and experience of two other people by mistake. An applicant may not mistake 40 years of continuous work for her own. The record reflects that both of the Maders were chronically discontinuous in their employment. Whatever may have been sympathetic about Parsaie, the Maders present no lack of acculturation. Parenthetically, Parsaie's case does not hold that a declaration of ultimate fact transcends all of the known context because in that case, the insurer conceded that it had not demonstrated her intent to

---

[1] Hannah Arendt, *The Origins of Totalitarianism*, 385 (Harcourt, New York 1973,) ("Their superiority consists in their ability immediately to dissolve every statement of fact into a declaration of purpose.)

deceive.  Copying a bad affidavit from a discrepant case does not create a genuine issue of fact.

The facts in *this* case show that Mader had no reason to misunderstand the application.  Further, Allstate has proven that Mader knew the truth, but lied.  Finally, Mader's affidavit creates no fact question; it restates her claim that she did not mean what she said.  The time that is important is then, not now. What is important is what she did and the inferences that can be drawn from it.  She may not spin herself a new story by simple assertion.

She has harped on the apparent fact that the salesman wrote the answers in the blanks after she told him the data.  Who wrote the answers on the form is no more important than who typed this opinion.  Whoever the scrivener, Yvonne Mader ask for the insurance, answered the questions orally, reviewed the completed form, and signed it as her act – her act to get insurance.  She is responsible for the objective falsity of her answers. Had she never read the answers or had she signed a blank sheet of paper for the purpose of the application, she is responsible for the consequences of her choices.  Her theory is that, if you get other people to help and if you do a really bad job, somehow it is not your responsibility.  Allstate insured her; it did not adopt her.

6. *Proof of Loss.*

If the insurance policy were not voided by the applicants' gross dishonesty, the carrier would still not have to pay a claim that is somewhere between fraudulent and delusional.  After the fire, Yvonne Mader reported these losses: $350,000 for property, $129,977 for equipment and dry inventory, and $50,000 for spoilage – a sum of $566,077. She sought the policy limit of $525,000. After swearing to these figures, Mader testified that she never requested a quote to replace the building and that each loss amount was "a guess."

- The Maders bought the land, building, and equipment from Sklar in 2003 for $100,000.
- Wharton County appraised the land at $18,000 and the building at $36,270.
- That leaves $45,730 for the purchase price of the equipment.
- Assume that the building would cost three times its value to replace; that means

>  that the building part of the claim was $108,810.

- Subtract the replacement cost of $108,810 from the total claim of $566,077 for a balance of $457,267.
- That balance has to be equipment and inventory. Assume that the replacement cost of the equipment bought from Sklar for $45,730 is three times that purchase price.
- The acquired equipment would have been replaced for $136,190, leaving a balance of the claim for *new* equipment and inventory of $321,077.

In six months – from August 2003 to February 2004 – the Maders would have had to have bought one-third of a million dollars of inventory and equipment for the claim to be accurate. Despite several conferences about disclosure and several orders, the Maders have not supplied the court with records that would account for one-tenth of the claim. While they claim new refrigeration units, they supply invoices for $5.72 for garlic salt.

The court does not need to engage in a finding about her credibility. Yvonne Mader swore that they were entitled to the policy limit without consideration of their actual loss. After an initial claim, discussions with the carrier, nine months of litigation, and three court orders, the Maders still have not substantiated their loss. They have disclosed no canceled check, no credit card charge, no work order, no invoice, and no purchase order that represents a substantial expense.

The Maders protested that all of their records were lost in the fire. That would likely be true; that is why they were ordered to go to their bank, suppliers, contractors, and others to get their copies. These were not ancient documents. They were current records – within six months.

7. *Counterclaim.*

For five months, the Maders have ignored court orders to supply objective evidence to supports their claim. They did not furnish receipts, photographs, or an affidavit from Sklar about the price of the equipment. The Maders circled items in a catalogue to demonstrate their loss, yet offered no proof that they actually owned those or similar items before the fire. They never proved the cost to replace the building.

Finally, instead of an appraisal or estimate, they offered an opinion letter from a real-estate agent.

The Maders lied to the court. First, the hid their divorce. Who got the claim in the division of property might be important to who has standing. Then, the court discovered that the Maders had filed for bankruptcy. The Maders hid the bankruptcy from the district court, and they hid this litigation and Sklar's claim on the note from the bankruptcy court. Finally, in response to a court order, the Maders represented that they did not accept credit cards, yet in her deposition, Yvonne Mader admitted that they had.

This recitation of their recalcitrance and obfuscation is illustrative. Because they persisted, the court struck the Maders' answer and counterclaim.

8. *Conclusion.*

The Mader's represented that they were experienced retailers – butchers – who were continuing a business that had functioned for four decades. They were not. If Allstate had known the truth, it would not have issued the insurance policy. The Maders' claim is patently false and should be prosecuted rather than paid. The merits are addressed only to show that they had a motivation for the obstruction and dishonesty that pervaded their presence in court and that caused their pleadings to have been struck.

On Allstate's motion for summary judgment, it will have a declaration that (a) the policy is void, and (b) if it were valid, the claim is false.

Conversely, the Maders will take nothing because their counter-claim has been struck. Based on their objective acts and representations, it would have died in the face of a defensive motion for summary judgment.

Signed August 25, 2005, at Houston, Texas.

Lynn N. Hughes   USDJ
United States District Judge